UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

MASARU TOMIZAWA,

                      Plaintiff,                             **MEMORANDUM & ORDER**
                                                                                            13-CV-6366 (MKB) (LB)

                      v.

ADT LLC and ANTHONY DEGRAZIO,

                        Defendants.

------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Masaru Tomizawa commenced the above-captioned action against Defendants ADT LLC ("ADT") and Anthony DeGrazio on October 9, 2013 in New York State court.[1] (Compl., annexed to Not. of Removal in Ex. A, Docket Entry No. 1.) Defendants removed the action to this Court on November 15, 2013. By his Amended Complaint filed on December 11, 2013, Plaintiff asserts claims pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–8-703, alleging that ADT and DeGrazio, Plaintiff's former employer and supervisor, respectively, discriminated against him and terminated his employment on the basis of his Japanese national origin and retaliated against him for complaining of discrimination.[2]

---

[1] Plaintiff's Complaint also named ADT Security Services Inc. as a Defendant, but his Amended Complaint named only ADT and DeGrazio. ADT asserted, in its notice of removal, that ADT Security Services Inc. no longer exists as a corporate entity, and that its residential and small business security-related operations were transferred to ADT in mid-2012. (Not. of Removal ¶ 4, Docket Entry No. 1.)

[2] The Amended Complaint also asserted discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). By letter dated July 1, 2014, Defendants requested a pre-motion conference to move to dismiss Plaintiff's

(Am. Compl., Docket Entry No. 6.) Defendants moved for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry No. 22.) On April 3, 2015, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. (April 3, 2015 Minute Entry.) On July 17, 2015, Judge Bloom issued a report and recommendation ("R&R"), recommending that the Court grant Defendants' motion for summary judgment and enter judgment in favor of Defendants on Plaintiff's discrimination and retaliation claims pursuant to both NYSHRL and NYCHRL. (Docket Entry No. 28.) Plaintiff timely filed objections. (Docket Entry No. 30.) Defendants filed a reply in opposition to Plaintiff's objections. (Docket Entry No. 31.) For the reasons set forth below, the Court adopts Judge Bloom's R&R in its entirety.

## I. Background

The facts and procedural history of this action are set forth in detail in the R&R and will not be repeated here.

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

---

claims based on, among other reasons, Plaintiff's failure to exhaust his administrative remedies by filing a claim with the Equal Employment Opportunity Commission ("EEOC"). (Docket Entry No. 14.) On July 25, 2014, the Court ordered Plaintiff to confirm whether he filed a charge of discrimination with the EEOC. (July 25, 2014 Minute Entry.) In response to the Court's July 25, 2014 order directing Plaintiff to confirm that he exhausted his administrative remedies, Plaintiff notified the Court by letter, dated July 30, 2014, that he had not filed a claim with the EEOC and was withdrawing his Title VII claims for discrimination and retaliation. (Docket Entry No. 16.) Based on Plaintiff's letter, the Court dismissed Plaintiff's Title VII claims during the pre-motion conference on August 22, 2014. (Aug. 22, 2014 Minute Entry.)

28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. 28 U.S.C. § 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2. The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1 (N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error." (citations omitted)); *Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the magistrate judge); *see also DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

   ii. **Summary judgment**

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Unopposed recommendations

Judge Bloom's recommendations as to Plaintiff's claims for discrimination pursuant to NYSHRL and NYCHRL, as well as Plaintiff's claim for retaliation pursuant to the NYSHRL, were unopposed. The Court has reviewed the unopposed portions of the R&R, and, finding no clear error, the Court adopts the recommendations as to Plaintiff's discrimination claims under NYSHRL and NYCHRL and as to his retaliation claim under NYSHRL pursuant to 28 U.S.C. § 636(b)(1), and grants Defendants' motion for summary judgment as to these claims.

### c. Plaintiff's objections

Plaintiff objects to Judge Bloom's recommendation that the Court dismiss his NYCHRL retaliation claim. (Pl. Objs. to R&R ("Pl. Obj."), Docket Entry No. 30.) Plaintiff argues that Judge Bloom erred in: (1) failing to conduct a separate and independent analysis of Plaintiff's NYCHRL retaliation claim under the more lenient standard applicable to such claims; and (2) improperly concluding that the record is devoid of any evidence upon which a jury could find retaliatory intent based on Plaintiff's complaints of national origin discrimination, and incorrectly concluding that Plaintiff's sole evidence of pretext was the temporal proximity

between Plaintiff's alleged complaints and Defendants' discipline. (Pl. Obj. 1.)

### d. NYCHRL retaliation claim

The NYCHRL prohibits employers from "retaliat[ing] . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). "[T]o prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)). This statute expressly requires that "its provisions 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed.'" *Mihalik*, 715 F.3d at 109 (quoting Local Civil Rights Restoration Act of 2005 (the "Restoration Act") § 7, N.Y.C. Local L. No. 85 (amending N.Y.C. Admin. Code § 8–130)). A plaintiff must establish, however, that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive.'" *Weber v. City of New York*, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (App. Div. 2013)); *see also Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281, 287 (S.D.N.Y. 2013) ("[U]nder all three statutes, Plaintiff must demonstrate some evidence that 'link[s] her complained-of [treatment] to a retaliatory motivation.'" (alteration in original) (quoting *Williams*

*v. N.Y.C. Hous. Auth.,* 872 N.Y.S.2d 27, 35 (App. Div. 2009))). The Court considers each of Plaintiff's objections.

### i. Separate and independent analysis

Plaintiff argues that the R&R failed to conduct an independent analysis of his NYCHRL retaliation claim under the more lenient NYCHRL standard. (Pl. Obj. 2.) Plaintiff's argument is frivolous. The R&R analyzes Plaintiff's NYCHRL retaliation claim under a separate section, (R&R 47–49), and independently concludes that "Plaintiff's retaliation claim fails even under the NYCHRL's more lenient standard," (R&R 48). Applying case law interpreting the NYCHRL, Judge Bloom found that Plaintiff failed to engage in protected activity under the NYCHRL. (R&R 47.) Nevertheless, Judge Bloom determined that, even assuming that Plaintiff had engaged in protected activity, his NYCHRL retaliation claim would fail "even under the NYCHRL's more lenient standard, because" Plaintiff did not present:

> the kind, quality, or nature of evidence that is necessary to overcome Defendants' legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff . . . . [since] Plaintiff's sole evidence of pretext, the temporal proximity between Plaintiff's complaints and Defendants' discipline, cannot demonstrate that Defendants' progressive discipline, initiated before Plaintiff's protected activity and supported by Plaintiff's poor performance record, was pretext for retaliation.

(R&R 48 (internal quotation marks omitted).) Plaintiff's claim that Judge Bloom has failed to conduct a separate NYCHRL analysis is therefore rejected as it is belied by the record.

In arguing that Judge Bloom failed to conduct a separate and independent analysis of Plaintiff's NYCHRL retaliation claim, Plaintiff does not cite to the R&R or address how, specifically, the R&R is deficient. Instead, Plaintiff cites to case law and legislative history for the general proposition that the NYCHRL is to be construed so as to accomplish its "uniquely broad and remedial" purposes. (Pl. Obj. 2.) Plaintiff also sets forth the following quote:

6

> Where a defendant has put forward evidence of one or more nondiscriminatory motivations for its actions, . . . . it should turn to the question of whether the defendant has sufficiently met its burden, as the moving party, of showing that, based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes — *McDonnell Douglas*, mixed motive, "direct" evidence, or some combination thereof . . . . If the plaintiff responds with some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, and thus such evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied.

(*Id.* at 2–3 (citing *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, ---, 92 A.D.3d 29, 45 (App. Div. 2011)).) Relying on this quotation, Plaintiff asserts that, "[w]hile before the implementation of the Restoration Act in 2005 pretext was the only factor in the analysis, now, the type of 'pretext evidence' under the NYCHRL has been extended to include any evidence that the reasons set forth by ADT for Mr. Tomizawa's termination are false, misleading, or incomplete." (*Id.* at 3.) Plaintiff does not, however, identify any such evidence that was overlooked or misconstrued by Judge Bloom, relying broadly on the argument that he has "put forth sufficient evidence" that ADT terminated him in retaliation for his complaint. (*Id.*) This argument, which poses a challenge to Judge Bloom's review of the evidence and not to whether her analysis was separate and independent, is addressed below.

    ii. **Evidence of retaliatory motive**

Plaintiff argues that the R&R erroneously concludes that the "record is devoid of any evidence upon which a jury could find an inference of retaliation based on Plaintiff's complaints of national origin discrimination."[3] (Pl. Obj. 3.) In objecting on this basis, Plaintiff merely re-

---

[3] The Court notes that this quotation is in the section of Judge Bloom's R&R that analyzes whether Plaintiff has "overcome Defendants' legitimate, nondiscriminatory reasons for

7

asserts the same arguments that were considered and rejected by Judge Bloom, without addressing the evidentiary deficiencies identified by Judge Bloom in the R&R. Thus, the Court reviews Judge Bloom's R&R for clear error. *See Rahman*, 2014 WL 688980, at *1.

### 1. Timing of various complaints

#### A. April 23, 2013 complaint

First, Plaintiff contends that his April 23, 2013 complaint that DeGrazio was "distributing leads and reassigning sales leads to other employees he favored," which was submitted to ADT Vice President Timothy McKinney and subsequently forwarded to DeGrazio, supports an inference of retaliation. (*Id.*; *see also* R&R 7–8 (setting forth the facts regarding Plaintiff's April 23, 2013 complaint).) Plaintiff contends that after DeGrazio's livid reaction to Plaintiff's complaint, as evidenced by a contemporaneous e-mail DeGrazio wrote to his wife stating that he was "furious" and had "[s]team coming out of [his] ears," as a result of having to spend time preparing a response to Plaintiff's complaint, (Pl. Obj. 3; R&R 8 (setting forth the facts regarding DeGrazio's reaction to Plaintiff's April 23, 2013 complaint)), DeGrazio "engaged in a systematic pattern of retaliation" against him. (Pl. Obj. 3.)

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted) (citing *Albunio v. City of New York*, 16

---

its decision to terminate Plaintiff . . ." or otherwise presented evidence that Defendants were motivated in part by retaliatory intent, (R&R 48 (internal quotation marks and alteration omitted)), and is not addressing only whether a minimal inference of retaliation could be raised, as would be required under the *McDonnell Douglas* burden-shifting scheme, which is used to analyze NYSHRL and Title VII claims. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

8

N.Y.3d 472, 474 (2011) and *Williams*, 872 N.Y.S.2d at 33–34); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 455 (E.D.N.Y. 2013). New York courts have read the NYCHRL's anti-retaliation provision broadly, holding that "opposing" discrimination can, in certain circumstances, include actions as subtle as the plaintiff's making clear to the defendant that he thought the defendant's treatment of the discrimination victim was wrong — provided the defendant and the plaintiff could have reasonably understood that plaintiff's criticism arose from discriminatory treatment. *Albunio*, 16 N.Y.3d at 479; *see also Mihalik*, 715 F.3d at 112.

As an initial matter, Plaintiff does not address Judge Bloom's conclusion that the April 23, 2013 complaint was not protected activity under the NYCHRL. As Judge Bloom concluded, Plaintiff did not complain of unlawful discrimination and instead explicitly "charges DeGrazio with 'an act of employee favoritism . . . .'" (R&R 35–37.) The letter specifically alleges that DeGrazio was taking assignments from Plaintiff and other employees in favor of a co-worker, Cortez. (Letter to McKinney dated Apr. 23, 2013, annexed to Decl. of Christopher G. Elko in Support of Defs. Mot. for Summ. J. ("Elko Decl.") as Ex. H, Docket Entry No. 22-3.) In order to constitute protected activity, a complaint must oppose or complain about discrimination prohibited by the NYCHRL, and there is no indication here that DeGrazio knew or should have known that the "favoritism" Plaintiff complained about arose from Plaintiff's or the other employee's "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, or alienage or citizenship status." N.Y.C. Admin. Code § 8-107(1)(a) (outlining characteristics on which discrimination is outlawed); *see also Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (affirming grant of summary judgment as to NYCHRL retaliation claim when plaintiff's complaints merely expressed "dismay over 'favoritism with one of the employees,'" and

9

defendant could not have been expected to understand that plaintiff was complaining about disparate treatment based on sex); *cf. Albunio*, 16 N.Y.3d at 478–79 (finding that a comment to supervisor that co-plaintiff "was the better candidate for the job" and that plaintiff would have "recommended [him] again" could have been protected activity because a jury could find that both the supervisor and the plaintiff knew that co-plaintiff was subject to discrimination — based on supervisor's earlier discriminatory remarks made in front of plaintiff — and that plaintiff's comment was criticism of that discrimination).

Furthermore, it was not clearly erroneous for Judge Bloom to conclude that "DeGrazio's anger at being accused of unfair treatment is insufficient to undermine Defendants' proffered legitimate, non-retaliatory reasons for its actions." (R&R 43.) Anger at being accused of employee favoritism does not show that "retaliation played any part in the employer's decision." *See Mihalik*, 715 F.3d at 116 ("[S]ummary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision."); *see also Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014) (noting a defendant is not liable for retaliation under the NYCHRL if the plaintiff fails to prove defendant's conduct was caused at least in part by retaliatory motive); *Urquhart v. Metro. Transp. Auth.*, 975 F. Supp. 2d 320, 340 (S.D.N.Y. 2013) (granting summary judgment on NYCHRL retaliation claim because no jury could find, based on the evidence presented, that the actions alleged "were caused even partly by retaliatory motives"); *Russo*, 972 F. Supp. 2d at 456 (quoting *Brightman*, 970 N.Y.S.2d at 792) (noting NYCHRL liability attaches when defendant's reasons for action are pretext or are motivated at least in part by impermissible reasons). Arguing that DeGrazio was "furious" with Plaintiff for non-protected activity does nothing to further Plaintiff's argument that Defendants harbored retaliatory motive when they terminated Plaintiff. *Cf. Yoselovsky v. Associated Press*, 917 F.

Supp. 2d 262, 279–80 (S.D.N.Y. 2013) (collecting cases, finding that remarks expressing frustration or anger with plaintiff's attitude and inability to complete work on time were not criticism of religious practices evidencing discrimination).

### B. May 9, 2013 e-mail complaint

Second, Plaintiff contends that his May 9, 2013 e-mail to ADT Human Resources Coordinator Mirela Rahmani,[4] complaining that DeGrazio issued negative performance evaluations in retaliation for Plaintiff's April 23, 2013 e-mail complaint, supports an inference of retaliation. (Pl. Obj. 3; R&R 9, 45–46 (setting forth relevant facts regarding Plaintiff's May e-mails to Rahmani).) Plaintiff fails to identify any specific deficiency in Judge Bloom's assessment of the May 9, 2013 e-mail and he points to no evidence that Judge Bloom either ignored or misconstrued as to this e-mail. As discussed above, Plaintiff's April 23, 2013 complaint could not have been understood to concern unlawful discrimination. For the same reasons, it was not error to conclude that Plaintiff's May 9, 2013 e-mail alleging that DeGrazio was "retaliating" against him for the April 23, 2013 complaint about employee favoritism was insufficient to put Defendants on notice that Plaintiff was complaining about unlawful employment practices.

### C. June 2013 complaints

Third, Plaintiff contends that his complaint made in "early June" of 2013,[5] which

---

[4] As is clear from the R&R, the record includes two e-mails from Plaintiff to Rahmani sent in May of 2013, the first on May 2, and the second on May 9. (R&R 9, 45–46.) Plaintiff objects on the basis of his "May 2013" e-mail to Rahmani without specifying the precise e-mail. (Pl. Obj. 3.) The Court understands Plaintiff's objection to refer to the May 9, 2013 e-mail.

[5] Plaintiff's "early June" 2013 Complaint was not mentioned in his Amended Complaint, and was instead first alleged in Plaintiff's opposition to Defendants' motion for summary judgment. (*See* R&R 43 (citing Pl. Aff. ¶ 14, Docket Entry No. 24-2; Am. Compl. ¶¶ 39–53).)

11

specifically refers to Plaintiff's belief that he was subject to discrimination on the basis of his national origin, supports an inference of discrimination. (Pl. Obj. 3–4; R&R 11, 43–44 (setting forth the relevant facts regarding the alleged June 2013 complaint).) As an initial matter, Plaintiff fails to address the R&R's conclusion that, because it was raised for the first time in Plaintiff's opposition papers, the June 2013 complaint is not properly before the Court. (R&R 43–44.) "It is 'well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint.'" *See Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 413 (S.D.N.Y. 2012) (citations omitted). It is thus appropriate to decline to consider Plaintiffs' new factual allegations regarding the June 2013 complaint.

Plaintiff further contends that the existence and timing of his June 14, 2013 complaint, which also specifically alleged national origin discrimination, supports an inference of retaliation. (Pl. Obj. 4; R&R 11–12 (setting forth the relevant facts regarding the June 14, 2013 complaint).) Plaintiff fails to identify any deficiencies in the R&R's assessment of the June 14, 2013 complaint and, again, does nothing more than make the conclusory assertion that his complaint supports an inference of retaliation.

In arguing that these complaints are evidence of retaliation, Plaintiff asserts that "*[a]fter filing the formal complaints, DeGrazio issued three performance improvement plans and a final written warning . . . . [and] requested that [Plaintiff] be terminated . . .*" (Pl. Obj. 4.) As Judge Bloom concluded, the temporal proximity between Plaintiff's June 2013 complaints and Defendants' application of progressive discipline and ultimate decision to terminate Plaintiff — which process was initiated prior to Plaintiffs' complaints and was amply supported by Plaintiff's poor performance record — is not sufficient to create an issue of fact as to whether Defendants were motivated, even in part, by retaliatory motive. (R&R 48.) The Court finds that

this conclusion is not clearly erroneous. *See Krasner*, 580 F. App'x at 4 (affirming grant of summary judgment on, *inter alia*, NYCHRL retaliation claims, noting that "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise" (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *66 (S.D.N.Y. Mar. 27, 2015) ("Of course, her Final Warning and ultimate termination occurred after [plaintiff] engaged in protected activity. But those adverse actions cannot be chalked up to retaliation [under Title VII, NYSHRL or NYCHRL], either, because they were part and parcel of a course of conduct that began well before any protected activity took place."); *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 42 (App. Div. 2012) (noting that it was not retaliation for defendant to continue paying him "too little money," which had prompted plaintiff to complain in the first instance, and that defendant cannot have "retaliated against plaintiff simply by denying that it was discriminating against him and confronting him with the professional lapses that were considered in setting his compensation").

To the extent Plaintiff argues that he has additional evidence beyond the fact that he was terminated within months of "his complaint specifically mentioning national origin discrimination," (Pl. Obj. 4), Plaintiff's arguments are addressed below.

### 2. Evidence of pretext beyond temporal proximity

Plaintiff contends that the R&R erroneously concludes that the only evidence of pretext is the temporal proximity between Plaintiff's complaints and the adverse employment actions. (Pl. Obj. 4–5.) Plaintiff reiterates the legal standard that should be applied, and argues that Plaintiff's "testimony of the delays in ADT's investigation along with the escalation of mistreatment he

faced following his complaints," coupled with the fact that he only has to show that discrimination was "a motivating factor" is sufficient evidence that "could allow a jury to believe" that Plaintiff's termination was pretext for retaliation. (Pl. Obj. 4.) Plaintiff merely re-asserts arguments presented to Judge Bloom, and claims that the evidence substantiates pretext without addressing the R&R's assessment and conclusions as to this evidence.

Judge Bloom applied the correct standard in analyzing Plaintiff's retaliation claim, citing case law to support the fact that Plaintiff could neither establish pretext, nor could he show that retaliation was a motivating factor in Plaintiff's discipline or termination. (R&R 48 (citing *Zann Kwan*, 737 F.3d at 846 (pretext) and *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 322 (E.D.N.Y. 2014) (motivating factor), *aff'd*, 594 F. App'x 29 (2d Cir. 2015)).) For the reasons discussed above, Judge Bloom did not err in concluding that, under the circumstances, the temporal proximity between Plaintiff's various complaints — including those which make no implicit or explicit reference to discrimination — and the adverse actions is not sufficient to create an issue of fact as to whether Defendants were motivated by retaliatory intent.

Plaintiff contends that the evidence of Defendants' delay in investigating his June 14, 2013 complaint establishes pretext. (Pl. Obj. 4.) Plaintiff neither addresses nor undermines the R&R's analysis and determination that, "[g]iven the lack of record evidence that Defendants failed to comply with their own internal procedures for investigating discrimination complaints, their delay in investigating the June complaint does not give rise to a reasonable inference of retaliatory animus." (R&R 42.) Furthermore, Plaintiff points to no evidentiary basis to conclude that the delay in investigating the complaint creates an issue of fact as to whether Defendants were motivated by impermissible animus when they disciplined or terminated Plaintiff. *See Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *11 (E.D.N.Y.

Sept. 24, 2014).

Plaintiff also claims that the "escalation of mistreatment he faced following his complaints" evidences pretext. (Pl. Obj. 4.) The R&R carefully considered the evidence as to the disciplinary measures to which Plaintiff was subjected and concluded that there was "a progressive series of disciplinary actions taken against [Plaintiff] that began months *before* he submitted his June 14 complaint and involved similar failures to meet objective sales criteria. This progressive discipline undermines any inference of retaliation." (R&R 40–41.) This conclusion is not clearly erroneous, in light of the evidence in the record.

Plaintiff missed sales quotas in January and February of 2013. (Dep. of Masaru Tomizawa ("Pl. Dep."), annexed to Elko Decl. as Ex. C, 148:10–149:13.) In a meeting on March 6, 2013, DeGrazio informed Plaintiff that he needed improvement and provided Plaintiff with an action plan for improvement. (Coaching for Improvement Form, annexed to Elko Decl. as Ex. F.) Plaintiff failed to meet his quotas in the following months. A customer complained about Plaintiff's performance, indicating that Plaintiff was rude and unresponsive. (Letter dated April 7, 2013, annexed to Elko Decl. as Ex. G.) Although DeGrazio did not place Plaintiff on a "Performance Improvement Plan" ("PIP") right away, because Plaintiff had not yet reached six months on the job, by May 1, 2013, Plaintiff was issued a PIP and directed to meet new sale quotas. (PIP, annexed to Elko Decl. as Ex. J; Decl. of DeGrazio in Support of Mot. for Summ. J. ¶¶ 15–20.) As Plaintiff continually failed to perform at the required standards, he was issued written warnings, and ultimately discharged.

As discussed above, when a course of disciplinary conduct is under way before protected activity occurs, a Plaintiff cannot rely on temporal proximity alone as evidence of retaliatory intent. *See Melman*, 946 N.Y.S.2d at 42. Plaintiff presents nothing more than his own subjective

belief that Defendants' actions were retaliatory and, thus, it was not erroneous to conclude that, absent any evidence of improper motivation, Plaintiff's claims could not survive summary judgment.

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Bloom's R&R in its entirety and grants Defendants' motion for summary judgment.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 29, 2015
      Brooklyn, New York

16